STATE OF NORTH CAROLINA v. PAUL WOODRUFF, JR.

No. 8322SC1173

(Filed 2 October 1984)

1. Kidnapping § 1.3— instructions different from indictment—error not objected to—no prejudice

Where the State charged defendant with kidnapping by removing the victim "to facilitate flight following the commission of a felony," the trial court erred in permitting the jury to convict upon finding that defendant removed the victim for the purpose of holding her as a hostage; however, defendant failed to make timely objections to the jury instructions as required by Rule 10(b)(2) of the N.C. Rules of Appellate Procedure, and the trial court's error was not so grievous as to justify the discretionary suspension of Rule 10(b)(2) by the court on appeal.

2. Criminal Law § 35— identity of perpetrator—evidence improperly excluded

In a prosecution of defendant for robbery with a dangerous weapon, felonious auto larceny, felonious breaking and entering, felonious larceny and kidnapping, the trial court erred in refusing to allow defendant to testify that a third person from whom he claimed to have received the stolen goods found in his home matched the victims' physical description of the armed intruder, since the description of the third person was relevant and material to the essential issue of whether defendant was correctly identified as the perpetrator of the crimes, and exclusion of the testimony prevented him from confronting the implications created by the victims' descriptions of the perpetrator.

APPEAL by defendant from *Davis, Judge.* Judgment entered 9 June 1983 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 28 August 1984.

Defendant was tried on bills of indictment charging him with robbery with a dangerous weapon, felonious auto larceny, felonious breaking and entering, felonious larceny, and kidnapping. On 4 December 1980, Tim Lowe returned to his Thomasville residence accompanied by his eleven-year-old son, Todd, and his eight-year-old daughter, Amy. Upon entering the house, Mr. Lowe heard a male voice, turned, and saw his daughter being held at gunpoint by a masked intruder. The gunman said that he was an

escaped convict who had killed before and would kill again. He demanded money and had Todd bring him Mr. Lowe's wallet. Unsatisfied with the amount of money he obtained from inside the house, the gunman ordered Todd to phone Mrs. Lowe, who was at a church choir practice, and tell her that Mr. Lowe had been injured and needed her at home.

Barbara Lowe returned home a short while later, accompanied by a friend, Paula Clodfelter. Shortly thereafter, Butch Clodfelter and Larry Johnson, friends from the church, arrived at the Lowe residence. The gunman took valuables from Mrs. Lowe, Mr. Clodfelter, and Mr. Johnson. Throughout the incident, the intruder held a gun on the Lowes' eight-year-old daughter. He left the house, taking the little girl with him, but returned a few moments later with Mrs. Clodfelter's purse, taken from one of the vehicles outside. Items were taken from the purse. He took the little girl and left the house again, ordering those inside to stay where they were.

The intruder let the child go and escaped in Mr. Clodfelter's car. At trial, the victims described the robber as white, medium build, five foot five inches tall, 140 to 150 pounds, and in his mid-twenties. They testified that a sliding glass door was discovered open in a bedroom and that various items were missing from the house.

The State presented evidence seized from defendant's alleged residence, a mobile home. Items discovered in the trailer matched the descriptions of the stolen items and were positively identified by the victims. Over objection, an undercover police officer testified that the trailer was rented to the defendant, but admitted that the sources of his information were defendant's father and another officer.

Defendant denied all the charges, stating that the items found in the trailer belonged to, or had been purchased from, a friend, Rene Sarratt. His attempts to describe Mr. Sarratt were blocked by the State's objections. Sarratt was later described as matching the victims' description of the intruder, as does defendant. Defendant subpoenaed Sarratt, but the authorities could not locate him to serve the subpoena. The jury found defendant guilty of all charges, and sentences totalling not less than 200 years of imprisonment were imposed.

*Attorney General Rufus L. Edmisten, by Associate Attorney Angeline M. Maletto, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender David W. Dorey, for defendant appellant.*

ARNOLD, Judge.

[1]  Defendant first contends that the trial court erred in its instructions to the jury on the kidnapping charge because the instructions given allowed the jury to convict on grounds other than those charged in the indictment. We agree with defendant's contention, but hold that in light of the totality of circumstances, defendant was not prejudiced by the error.

Defendant was tried for kidnapping under G.S. 14-39(a) which provides:

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
> (1) Holding such other person for ransom or as a hostage or using such other person as a shield; or
>
> (2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or
>
> (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.
>
> (4) Holding such other person in involuntary servitude in violation of G.S. 14-43.2.

The portion of the indictment under which defendant was convicted of kidnapping charged the following:

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That Paul Woodruff, Jr. . . . . did unlawfully, wilfully and feloniously kidnap Amy Lowe, a person under the age of sixteen (16) years, by unlawfully and forcibly confining and restraining

and removing her from one place to another, without the consent of her parents, *for the purpose of facilitating flight of the said Paul Woodruff, Jr., following the commission of a felony, to wit: armed robbery* against the form of the statute in such case made and provided and against the peace and dignity of the State. (Emphasis added.)

The trial judge's instruction to the jury on the kidnapping charge read, in part, as follows:

As to the indictment of kidnapping, I charge that for you to find the defendant guilty of kidnapping the State must prove three things and prove these beyond a reasonable doubt: First, that the defendant unlawfully removed Amy Lowe from one place to another; second, that Amy Lowe had not reached her sixteenth birthday and her parents did not consent to this removal. Consent obtained or induced by fraud or fear is not consent; *third, that the defendant did this for the purpose of holding Amy Lowe as a hostage.* To hold a person as hostage means to hold him as security for the performance or forebearance of some act by a third person. (Emphasis added.)

The judge went on to apply the evidence to the elements he had listed.

A comparison of these excerpts from the indictment and the jury instruction reveals that the trial judge, in the jury instructions, specified a felonious purpose and a theory of conviction that, while enumerated in the statute, were not alleged in the indictment. The State charged defendant with kidnapping "to facilitate flight following the commission of a felony," and therefore the judge was required to instruct the jury on that charge. It was error for him not to do so. "[W]here the indictment for a crime alleges a theory of the crime, the State is held to proof of that theory and the jury is only allowed to convict on that theory." *State v. Taylor,* 304 N.C. 249, 275, 283 S.E. 2d 761, 778 (1981).

Ordinarily, such an error would be considered prejudicial and would warrant a new trial. Defendant, however, failed to make timely objections to the jury instructions as required by Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure. That rule states: "No party may assign as error any portion of the jury

charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict. . . ." Defendant was given ample opportunity to object to the jury instructions prior to the beginning of deliberations. He declined to make those objections on at least three occasions. We hold, therefore, that defendant cannot assign as error any portion of the jury instructions. Additionally, the trial court's error was not so grievous as to justify the discretionary suspension of Rule 10(b)(2) as permitted by Rule 2, North Carolina Rules of Appellate Procedure.

[2] Defendant next contends that the trial court erred in refusing to allow defendant to testify that Rene Sarratt, from whom defendant claims to have received the stolen goods, matched the victims' physical description of the armed intruder. He argues that the testimony in question was relevant and material, and that the court's refusal to admit it amounted to a denial of his right to present his defense. We agree and find that the court improperly refused to admit the testimony.

"A defendant may introduce evidence tending to show that someone other than defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party." *State v. Hamlette*, 302 N.C. 490, 501, 276 S.E. 2d 338, 346 (1981). In the case at bar, the excluded evidence points directly to Sarratt and tends to support the conclusion that Sarratt, rather than the defendant, committed the crimes. The description of Sarratt was relevant and material to the essential issue of whether the defendant was correctly identified as the perpetrator of the crimes. It was improperly excluded. Yet, to justify a new trial, the defendant must show that the trial judge's refusal to admit his testimony as to Sarratt's description prejudiced him. *State v. Milby*, 302 N.C. 137, 273 S.E. 2d 716 (1981). The defendant contends that the exclusion of the testimony prevented him from confronting the implications created by the victims' descriptions of the perpetrator of the crimes. We agree, and find that this may have seriously disadvantaged the defendant in presenting his defense. We cannot say that if the jury had considered the defendant's excluded testimony it would not have reached a different result. The defendant was prejudiced by the exclusion of Sarratt's description and deserves a new trial on this ground.

Finally, defendant contends that the trial court erred in admitting, over objection, hearsay testimony regarding defendant's rental of the trailer in which the stolen items were found, in failing to strike that testimony, and in improperly stating the rental as a fact in the presence of the jury. We find no merit in these contentions. Defendant was not prejudiced in any way by these actions because he subsequently offered the same evidence by admitting to having rented the trailer, and by failing to object continually to its admission.

New trial.

Judges WHICHARD and EAGLES concur.